UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 07-225-GWU

VICKIE GODFREY,                                                          PLAINTIFF,

VS.                          **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                          DEFENDANT.

**INTRODUCTION**

The plaintiff brought this action to obtain judicial review of an administrative

denial of her applications for Disability Insurance Benefits (DIB) and Supplemental

Security Income (SSI).  The appeal is currently before the court on cross-motions

for summary judgment.

**APPLICABLE LAW**

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial

review of Social Security disability benefit cases:

1.     Is the claimant currently engaged in substantial gainful activity?
       If yes, the claimant is not disabled.  If no, proceed to Step 2.
       See 20 C.F.R. 404.1520(b), 416.920(b).

2.     Does the claimant have any medically determinable physical
       or mental impairment(s)? If yes, proceed to Step 3.  If no, the
       claimant is not disabled.  See 20 C.F.R. 404.1508, 416.908.

3.     Does the claimant have any severe impairment(s)--i.e., any
       impairment(s) significantly limiting the claimant's physical or
       mental ability to do basic work activities?  If yes, proceed to

1

07-225 Godfrey

Step 4.  If no, the claimant is not disabled.  <u>See</u> 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

4.     Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months?  If yes, proceed to Step 5.  If no, the claimant is not disabled.  <u>See</u> 20 C.F.R. 404.920(d), 416.920(d).

5.     Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled.  If no, proceed to Step 6.   <u>See</u> 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6.     Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work?  If yes, the claimant was not disabled.  If no, proceed to Step 7.  <u>See</u> 20 C.F.R. 404.1520(e), 416.920(e).

7.     Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy?  If yes, the claimant is not disabled.   <u>See</u> 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

<u>Garner v. Heckler</u>, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply.  Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence.  <u>Jones v. Secretary of Health and Human Services</u>, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial

2

evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight.  Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim.  Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982).  This presumes, of course, that the treating physician's opinion is based on objective medical findings.  Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984).  Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary.  Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987).  These have long been well-settled principles within the Circuit.  Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain.  Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms.  20 C.F.R. § 404.1529 (1991).  However, in evaluating a claimant's allegations of disabling pain:

07-225 Godfrey

> First, we examine whether there is objective medical evidence of an underlying medical condition.  If there is, we then examine:  (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment.  The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability.  Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984).  However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id.  Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups.  Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987).  Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way

4

07-225 Godfrey

to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

5

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. § 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Ibid. In such cases, the agency may be required to consult a vocational specialist.

Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments.  Varley  v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Vickie Godfrey, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of a depressive disorder and generalized anxiety disorder.  (Tr. 16).  Nevertheless, based in part on the testimony of a Vocational Expert (VE), the ALJ determined that Mrs. Godfrey retained the residual functional capacity to perform a significant number of jobs existing in the economy, and therefore was not entitled to benefits.  (Tr. 20-3).  The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ asked the VE whether a person of the plaintiff's age of 44, high school education, and work experience as a cashier, order clerk, and gift shop manager could perform any jobs if she had no exertional restrictions, but was limited to simple, repetitive tasks in an object-focused work setting that required no production rate work on a timed basis, no more than occasional interaction with coworkers or supervisors, and no contact with the general public.  (Tr. 407-8).  In response, the VE stated that there were jobs that

such a person could perform, and proceeded to give the numbers in which they existed in the state and national economies. (Id.).

On appeal, this court must determine whether the administrative decision is supported by substantial evidence.

The plaintiff alleged disability due to depression, poor concentration, forgetfulness, headaches, and fatigue. (Tr. 111). She testified that she had a nervous breakdown, in February, 2001, while going through a divorce, and had not been able to sustain a return to work. (Tr. 378-9). She had been tried on a large variety of anti-depressant medications, but most of them had too many side effects for her to continue. (Tr. 390-3). She was only taking Xanax at the time of the hearing. (Tr. 391). It was prescribed by a family physician, Dr. Lively, and she was receiving home visits from a counselor named Diana Payne because she could not keep counseling appointments. (Tr. 392, 394). The counselor was connected with Social Services because she was under investigation for threatening her husband. (Tr. 398). She stated that she had known Dr. Lively for a long time and had gone to him for this reason; she did not like discussing her problems and had also had difficulty with counseling at one local mental health clinic because her husband's ex-wife had worked there and had improperly found out some details of her treatment. (Tr. 400).

Medical evidence in the transcript from before the plaintiff's alleged onset date in February, 2001 indicates that she did have complaints of depression and

stress, poor response to anti-depressants, and difficulty working.  (Tr. 118-19). Evidence from after the onset date shows several psychiatric admissions for depression, although on discharge her Global Assessment of Functioning (GAF) scores were said to be in the range of moderate impairment or better (Tr. 154, 156, 182-3).    Some   follow-up   notes   from   what   are   apparently   two   different Comprehensive Care Centers (CCC) also show diagnoses of depression and difficulty with side effects from anti-depressant medication, including weight gain at one point (Tr. 220-1), and they also show that some of the anti-depressant medications were stopped by medical staff after one of her psychiatric hospitalizations (Tr. 218).  No specific functional restrictions are given.

Dr. Kenneth Starkey, a psychologist, conducted a consultative examination in May, 2005.  The conclusions in his narrative report appear to be somewhat contradictory.  He stated that, taken together, Mrs. Godfrey's symptoms created mild to moderate personal distress and impairment of social and occupational functioning and that her response to normal stresses of a day-to-day work environment were likely to be marked by mild to moderate difficulty managing and mild to moderate difficulty sustaining the attention and pace necessary for completing tasks common to most everyday work settings. (Tr. 230). He diagnosed a depressive disorder and assigned a GAF score of 60. (Id.). A GAF score of 60 represents moderate symptoms or moderate difficulty in social, occupational, or school functioning. Diagnostic and Statistical Manual of Mental Disorders (4th Ed.--

9

07-225 Godfrey

Text Revision), p. 34.  He then proceeded to opine that the plaintiff could be rendered psychologically appropriate for vocational placement or training after six months of pharmacotherapy and weekly psychotherapy.  (Tr. 231).  He concluded that without this treatment, her prognosis for being able to sustain gainful public employment at any future time was "guarded to poor."  (Id.).

State agency psychologists reviewed the evidence at this point, and without commenting on Dr. Starkey's opinion that the plaintiff would be unable to work without medication and weekly therapy, concluded that she was moderately limited only in her ability to respond appropriately to changes in the work setting and could complete at least simple, repetitive work tasks and tolerate the routine stress of an object-focused setting.  (Tr. 233-5, 267-70).

Subsequently, several office notes were submitted from Dr. Charles Lively, which indicate that the plaintiff was complaining of anxiety, panic episodes, and withdrawal.  (Tr. 337).  Dr. Lively prescribed Xanax, after which the plaintiff reported improvement during the next several visits.  (Tr. 341-5).  Nevertheless, Dr. Lively submitted a mental residual functional capacity assessment dated June 28, 2006 reporting that Mrs. Godfrey had no useful ability to function in most areas, and a "seriously limited but not precluded" ability in many others.  (Tr. 352-3).  The grounds for his restrictions were given as frequent paranoid episodes, panic attacks, and outbursts of anger.  (Id.).

07-225 Godfrey

Diana Payne, the individual who was counseling Mrs. Godfrey in her home, also submitted a letter describing what appeared to be a major depressive disorder after several weeks of home visits, and a functional capacity assessment indicating that the plaintiff had poor or no ability in nearly all areas.  (Tr. 347-9).  Her occupation was given as "outreach coordinator," and it is not clear what mental health qualifications she might have.  Payne also stated that she had not had the opportunity to review the plaintiff's medical records as yet.  (Tr. 347).  The ALJ stated that he gave great weight to Dr. Starkey's opinions as appearing to be most consistent with the record as a whole, and that he rejected the opinions of Payne because she was not a medical source and did not provide specific clinical detail. (Tr. 21).  Dr. Lively's opinion was discounted because he was not a mental health professional and because the ALJ felt that his contact with the plaintiff had been too intermittent to establish a true doctor-patient relationship.  (Id.).

While the court agrees that the evidence from Dr. Lively is not conclusive enough for an immediate award of benefits, reliance on Dr. Starkey's opinion is insufficient given the significant qualifications he placed on the plaintiff's current ability to work.  Although the ALJ described Dr. Starkey as opining that her likely depression under the pressures found in most day-to-day work settings "would most likely change after a brief period of compliance with psychotherapy" (Tr. 18), Dr. Starkey actually stated that she had a guarded to poor ability to sustain gainful public employment and this "could," not "most likely," be improved after six months

11

07-225 Godfrey

of treatment.  (Tr. 231).  Given the plaintiff's poor reaction to medication, the possibility of such improvement might be considerably more difficult than the psychologist believed, but, in any case, the failure of either the ALJ or the state agency reviewers to acknowledge Dr. Starkey's statement renders their conclusions invalid.  At a minimum, the ALJ should have obtained the opinion of a medical advisor with access to the entire record in order to resolve the conflicts in the various professional opinions.

Moreover, the ALJ's criticism of the plaintiff's credibility because of her failure to comply with counseling and medication is dubious.  The Sixth Circuit has held that it is poor practice to chastise a person with a mental impairment for lack of diligence in seeking rehabilitation.  Blankenship v. Bowen, 874 F.2d 1116, (6th Cir. 1989).  Finally, the court notes in passing a third party function report submitted by the plaintiff's aunt (Tr. 82-90), which also should have been considered.  20 C.F.R. § 404.1513(d)(4); see also 20 C.F.R. § 404, Subpt. P, App. 1, § 1200(D)(1)(c).

The decision will be remanded for further consideration.

This the 16th day of April, 2008.



**Signed By:**

**_G. Wix Unthank_**

**United States Senior Judge**

12